**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JAY P. GILBERTSON,**
            **Petitioner,**

**vs.**                                              **Case No. 3:09cv178/LC/MD**

**SCOTT P. FISHER,**
            **Respondent.**

---

## REPORT AND RECOMMENDATION

      **Petitioner, represented by counsel, commenced this action on April 22, 2009 by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 (doc. 1), which he later amended (doc. 14).  The respondent filed a response (doc. 19), and petitioner replied (doc. 22).   On May 19, 2010, respondent filed a motion to dismiss the amended petition as moot (doc. 24).  Petitioner has responded in opposition to dismissal (doc. 26).  For the reasons that follow, the undersigned recommends that respondent's motion be granted and the amended petition dismissed.**

## BACKGROUND

      **Petitioner was sentenced in the United States District Court for the Northern District of California to serve 24 months of imprisonment followed by 3 years of supervised release for conspiring to commit securities fraud in violation of 18 U.S.C. § 371, and making false statements in a securities filing in violation of 15 U.S.C. § 78ff.  (Doc. 14, p. 2; Doc. 19, Attach. C).  At the time he initiated this action, he was housed at a Federal Prison Camp ("FPC") in Pensacola, Florida. He has since been**

released from the Bureau of Prisons' ("BOP") custody and is serving his term of supervised release.  (Doc. 24, Attach. 1; Doc. 26).

In this habeas action, petitioner claims the BOP violated his due process and equal protection rights when it denied his request for pre-release custody placement in a Residential Re-Entry Center ("RRC") for 9 months with 73 days home confinement.[1]  As a result of the BOP's alleged failure to consider the required factors, and its consideration of other, allegedly improper factors, petitioner was recommended for a shorter period of RRC placement.  (Doc. 14, pp. 1-5).  Petitioner also raises a retaliation claim – that one month after the filing of the original petition in this case BOP staff retaliated against him by engaging in "excessive harassing drug screen testing."  (*Id*., p. 5A, and Mem., p. 1).  As relief for the alleged constitutional violations, petitioner seeks "[to] be immediately assigned to RCC confinement at a halfway house near Atlanta, Georgia for a period of 9 months with 73 days of home confinement pursuant to BOP policy and directives implemented under the Second Chance Act, including the multiple factors outlined therein."  (*Id*., p. 6).

During the pendency of this proceeding, petitioner was transferred on January 20, 2010 to an RRC, which allowed him 86 days of RRC placement until his final release date of April 16, 2010.  (Doc. 19, Attach. C).  Petitioner was released by the BOP on April 16, 2010, having served the incarceration portion of his sentence.  (Doc. 24, Ex. 1; *see also* 18 U.S.C. § 3624(a) ("A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence. . . .")).  He is currently on supervised release.  (Doc. 24, Ex. 1; Doc. 26).

Respondent seeks dismissal of this action on the grounds that to the extent petitioner challenges the denial of his request for RRC placment and seeks

---

[1] An RRC is a correctional facility.  Prior to March 31, 2006, RRCs were referred to as Community Corrections Centers (CCCs).  They are commonly known as halfway houses.

*Case No: 3:09cv178/LC/MD*

immediate release, his petition is moot because he has been released from BOP custody.  (Doc. 24, Ex. 1).  To the extent petitioner asserts constitutional claims arising from prison officials' alleged retaliation against for filing this action, the court is without jurisdiction to consider such claims in this habeas proceeding. (Doc. 24).

In reply, petitioner's counsel argues that although petitioner has been released from the incarceration portion of his sentence, the petition is not moot because petitioner "remains subject to BOP supervision while completing probation and community service."  (Doc. 26, p. 2).  Counsel further argues that petitioner's "late assignment to a half-way house has affected [petitioner's] ability to secure gainful employment as he remains under the jurisdiction of the BOP.  For example, he currently has three years of probation, which confines him to the State of Georgia, unless he receives approval from his probation officer for any out-of-town trips.  He also remains subject to random drug screens, and is still required to perform 200 hours of community service.  He is also required to report to the BOP each month about his job status and any change in financial status and to advise whether he remains in the state."  (*Id*., p. 3).  Counsel further contends the petition is not moot because petitioner "has raised other constitutional questions" in this proceeding.  (*Id*., p. 2).

### STATUTORY AND REGULATORY FRAMEOWRK

Previously, 18 U.S.C. § 3624(c) directed that the BOP:

> shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.  The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

**18 U.S.C. § 3624(c)**, *amended*, **Pub.L. No. 110-199, Title II, § 251(a), 122 Stat. 657 (2008). The Second Chance Act of 2007, enacted on April 9, 2008, altered the BOP's authority in making RRC placement decisions under 18 U.S.C. § 3624(c). That section now provides:**

> **(1) In general.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.**
>
> **(2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.**
>
> **(3) Assistance.-The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.**
>
> **(4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.**

**18 U.S.C. § 3624(c)(1)-(4). The Act also amended § 3624(c) to require:**

> **(6) Issuance of regulations.-The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-**

        **(A) conducted in a manner consistent with section 3621(b)[2] of this title;**

        **(B) determined on an individual basis; and**

        **(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.**

**18 U.S.C. § 3624(c)(6) (footnote added).**

**The BOP amended its regulations on October 21, 2008, to provide for placement in an RRC for up to twelve (12) months.  *See* 28 C.F.R. § 570.21; 73 Fed. Reg. 62440, 62443 (Oct. 21, 2008).  Section 570.21 now provides, in pertinent part:**

        **(a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.**

        **(b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.**

**28 C.F.R. § 570.21.**

**It is petitioner's contention that the BOP failed to follow its own directives and the statutory requirements of the Second Chance Act when it determined the length of his RRC placement.**

---

[2] **Under § 3621(b), the BOP may designate that a prisoner be housed in a facility that it determines is "appropriate and suitable, considering," among other factors, "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . ; and (5) any pertinent policy statement issued by the Sentencing Commission."  18 U.S.C. § 3621(b)(1)-(5).**

**DISCUSSION**

<u>Mootness</u>

Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies.*" Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). The case or controversy requirement continues through all stages of federal judicial proceedings, and requires that parties have a personal stake in the outcome. *Lewis*, 494 U.S. at 477-478, 110 S.Ct. 1249. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (quoting *Lewis*, 494 U.S. at 477, 110 S.Ct. 1249). A federal court lacks the power to decide questions that cannot affect the rights of litigants before it. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] claim is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."). When a party "has already received the relief that he is seeking from this Court, . . . the issue is no longer live" and the case is moot. *United States v. Beltran-Gabito*, 280 F. Appx. 861, 863 (11th Cir. 2008) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003)).

In the habeas context, a prisoner's "challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7, 118 S.Ct. 978. Once a sentence has expired, however, some continuing injury, also referred to as a "collateral consequence," must exist for the action to continue. *Id*. The Supreme Court has previously been willing to presume that such collateral consequences remain after the expiration of a petitioner's sentence where it is the legality of the conviction that is challenged. *Cafaras v.*

*LaVallee*, 391 U.S. 234, 237-238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). However, where a petitioner is challenging only the legality of his sentence, rather than the underlying conviction itself, this presumption no longer applies. *Lane v. Williams*, 455 U.S. 624, 632, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982);[3] *Spencer*, 523 U.S. at 14.[4] Release from custody renders a habeas action moot unless the petitioner can show the existence of some collateral consequences arising upon the expiration of his sentence. *Spencer*, 523 U.S. at 14.

Here, petitioner does not challenge the validity of his conviction. He challenges only the BOP's execution of the incarceration portion of his sentence – the procedures used to determine what portion of his incarceration should be spent at an RRC. As relief, he requests that he "be immediately assigned to RCC confinement at a halfway house near Atlanta, Georgia for a period of 9 months with 73 days of home confinement pursuant to BOP policy and directives implemented under the Second Chance Act, including the multiple factors outlined therein." (Doc. 14, p. 6). But the record establishes that during the pendency of this action petitioner was released to an RRC and eventually released from the incarceration portion of his sentence. Therefore, petitioner presently has no interest in the procedures followed by the BOP in considering how much of his sentence should be served at an RRC. Moreover, this court can no longer provide him the relief he seeks – immediate placement at an RRC.

---

3 In *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the Court declined to extend the presumption of collateral consequences in the context of a challenge to a mandatory parole violator term when, during the pendency of the litigation, the term had expired. *Id*. at 632-33, 102 S.Ct. 1322.

4 In *Spencer*, the Court "decline[d] to presume that collateral consequences adequate to meet Article III's injury-in-fact requirement resulted from petitioner's parole revocation," *Spencer*, 523 U.S. at 14, 118 S.Ct. 978, once that term had expired. As in *Lane*, the fact that the parolee was not challenging the validity of his conviction factored heavily in the decision not to presume collateral consequences.

*Case No: 3:09cv178/LC/MD*

In opposing dismissal, petitioner's counsel argues that the petition is not moot because petitioner's sentence has not fully expired – he remains "in custody" serving the supervised release portion of his sentence. But the amended petition does not challenge the validity or reasonableness of that aspect of petitioner's custody, nor does it seek relief from the terms or conditions of supervised release. The amended petition challenges only the validity of the BOP's decision concerning petitioner's RCC placement and seeks as relief immediate placement in an RRC.

Even if the amended petition sought relief from the terms or length of petitioner's supervised release, petitioner does not allege, and the record does not support a finding, that the BOP's decision on his RRC placement caused him to be incarcerated beyond the proper expiration of his prison term, such as to effect his supervised release.[5] It would therefore be unclear on what grounds this court could

---

5 **This distinguishes petitioner's case from *Dawson v. Scott*, 50 F.3d 884 (11th Cir. 2005), and *Mitchell v. Middlebrooks*, 287 Fed. Appx. 772 (11th Cir. July 18, 2008). In *Dawson*, a federal prisoner (Mr. Dawson) challenged the BOP's failure to credit his sentence with time spent on conditional release in halfway and safe houses. After the petition was denied on the merits and while Dawson's appeal was pending, he completed his term of incarceration and began serving his period of supervised release. *Id*. at 886. In a footnote, the Eleventh Circuit rejected the government's argument that the appeal was moot, explaining: "Dawson is still serving his term of supervised release, which is part of his sentence and involves some restrictions upon his liberty. Because success for Dawson could alter the supervised release portion of his sentence, his appeal is not moot." *Id.* (citing *Jago v. Van Curen*, 454 U.S. 14, 21 n. 3, 102 S.Ct. 31, 36 n. 3, 70 L.Ed.2d 13 (1981) (per curiam), and *United States v. Eske*, 925 F.2d 205, 206 n. 2 (7th Cir. 1991)).**

**In *Mitchell*, a federal prisoner (Mr. Mitchell) filed a habeas petition challenging the BOP's withdrawal of its approval for him to receive a one-year sentence reduction upon completion of a residential drug abuse program. As relief, Mitchell sought "immediate release to community corrections to complete the requirements of [Mitchell's] early release pursuant to 18 U.S.C. § 3621(e)." *Id.* at 773. While the § 2241 petition was pending before the district court, Mitchell completed his sentence and was released from prison to begin his term of supervised release. In light of those events, the magistrate judge recommended that the petition be dismissed as moot. Mitchell objected to the report and recommendation, arguing that his petition was not moot because, had he received the one year sentence reduction, he would complete his supervised release a year earlier. He also requested permission to modify the request for relief in his habeas petition to include the termination of his supervised release. The district court overruled Mitchell's objections, adopted the magistrate's report and recommendation, and denied Mitchell's § 2241 petition as moot. The Eleventh Circuit reversed, relying on *Dawson, supra*, and explaining:**

> **The facts of this case are materially indistinguishable from *Dawson*. Mitchell filed his § 2241 petition while he was still a federal prisoner and his petition alleged**

***sua sponte*** **determine that modification of petitioner's supervised release was appropriate, or how that relief would redress petitioner's alleged injury of not being transferred to an RRC at an earlier date.  Further, since this court is not the sentencing court, it would appear beyond the court's jurisdiction to modify petitioner's term of supervised release.  *See* § 18 U.S.C. 3583(e)(2) (authorizing the**

---

that he was being forced to serve too much time in prison.  As in *Dawson*, Mitchell was released from prison and began serving his supervised release during the pendency of the action.  The fact that he was released from prison, however, does not by itself render Mitchell's petition moot because, as in *Dawson*, the supervised release he is currently serving "is part of his sentence and involves some restrictions upon his liberty."  *Dawson*, 50 F.3d at 886 n. 2.  Moreover, although Mitchell's original petition requested release, he has since asked for permission to modify the request for relief to include the termination of his supervised release.  Success for Mitchell in his § 2241 petition could, therefore, "alter the supervised release portion of his sentence." *Id*.

*Id*. at 774.

Unlike the circumstances in *Dawson* and *Mitchell*, petitioner's claim here does not involve sentence credit.  Petitioner does not assert that the length of his stay at an RRC affected the length of his incarceration or the date his supervised release commenced.  Nor does his counsel argue that petitioner's success in this case will show he served excess prison time such as to support equitable modification of his supervised release.  *See United States v. Johnson*, 529 U.S. 53, 59-60, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (expressing the view that incarceration and supervised release serve distinct objectives and are not to be viewed as interchangeable punitive measures, but noting that a term of supervised release "may" be modified where an individual serves excess prison time).  Thus, one of the primary bases upon which the *Dawson* and *Mitchell* decisions was based – the fact that success in the habeas proceeding could alter the supervised release portion of the petitioner's sentence – is not present here.  *See Mitchell*, 287 Fed. Appx. at 775 (holding that the § 2241 petition "is not moot because it is possible [the petitioner] could receive a reduced or modified term of supervised release from the sentencing court if he succeeds in this habeas proceeding;" further explaining that in *Dawson*, its rejection of the government's mootness argument "hinged upon the liberty restrictions that supervised release imposes <u>as well as the fact that success on appeal could have altered the supervised release portion of the petitioner's sentence</u>.") (emphasis added).

Even if petitioner's counsel did make that argument, and even if the first amended petition was amended to include a request that petitioner's supervised release be modified (something petitioner has not done), this district court is without jurisdiction to make a determination concerning petitioner's supervised release; that determination is to be made by the sentencing court.  *See* § 18 U.S.C. 3583(e)(2) (authorizing the sentencing court to impose and modify a term of supervised release); 18 U.S.C. § 3605 (authorizing a court to exercise jurisdiction over a person on supervised release if such jurisdiction has been transferred by the sentencing court).  Petitioner was not sentenced in this district court.  A pronouncement by this court concerning petitioner's § 2241 allegations would not result in "specific relief through a decree of a conclusive character" with regard to modification of petitioner's sentence.  *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (citation and internal quotation marks omitted).

*Case No: 3:09cv178/LC/MD*

sentencing court to impose and modify a term of supervised release); 18 U.S.C. § 3605 (authorizing a court to exercise jurisdiction over a person on supervised release if such jurisdiction has been transferred by the sentencing court). Petitioner does not assert that the sentencing court has transferred jurisdiction here.

Petitioner's remaining arguments in opposition to dismissal – his reiteration of the terms of his supervised release and his contention that he is entitled to summary judgment on the merits of his claims – are unpersuasive. Petitioner's reiteration of some of the conditions of his supervised release does not meet his burden of articulating concrete injuries or deprivations that are consequences of the challenged BOP decision concerning RRC placement and that remain live controversies for which this court could provide meaningful relief. *Id.* at 12-13, 118 S.Ct. 978. Moreover, counsel's contention that petitioner is entitled to summary judgment[6] misses the mark. Regardless of whether a claim may have merit, a federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue. *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).

In sum, petitioner fails to allege facts demonstrating a "continuing injury" or "collateral consequences" flowing from his delayed placement in an RRC that could be redressed by a favorable judicial outcome. *See Spencer*, 523 U.S. at 14, 118 S.Ct. 978. His habeas claims should therefore be dismissed as moot.

This conclusion is consistent with the decisions of other circuit courts that have addressed the mootness issue in identical circumstances. *See, e.g., Demis v. Sniezek*, 558 F.3d 508 (6th Cir. 2009) (holding that § 2241 petition challenging the BOP's failure to transfer the petitioner to an RRC was rendered moot by the

---

6 **Specifically, counsel argues that the case is not moot because "the writ application seeks a ruling that must be decided as a matter of law. BOP improperly followed superseded guidelines in denying Gilbertson's request for CCC assignment. Accordingly, . . . the pending writ application may be decided as any summary judgment proceeding, notably because BOP admits reliance on the superseded memorandum." (Doc. 26, p. 2)**.

*Case No: 3:09cv178/LC/MD*

petitioner's placement in an RRC and subsequent release from custody to a term of supervised release; "Because Demis already was transferred to a CCC and now has been released from custody, no actual injury remains that the Court could redress with a favorable decision in this appeal. We therefore must dismiss Demis' appeal as moot."); *Miller v. Whitehead*, 527 F.3d 752, 756 (8ᵗʰ Cir. 2008) (dismissing § 2241 appeal as moot because inmates had received the requested relief of placement in an RRC); *Muniz v. Sabol*, 517 F.3d 29, 34 (1ˢᵗ Cir. 2008) (federal prisoner's § 2241 challenging BOP's denial of placement in an RRC was mooted by petitioner's release from custody); *see also Walker v. Sanders,* No. 09-56380, 2010 WL 2640358 (9ᵗʰ Cir. July 1, 2010) (affirming district court's dismissal of § 2241 petition as moot, where petition challenged BOP's determination concerning RRC placement and sought immediate transfer to an RRC, and petitioner was placed at an RRC during pendency of the proceeding); *Laor v. Federal Bureau of Prisons*, 340 Fed. Appx. 771 (3ʳᵈ Cir. Aug. 19, 2009) (holding that federal prisoner's release to RRC rendered moot § 2241 petition challenging BOP's pre-release custody policies and seeking placement in pre-release custody; prisoner demonstrated no concrete and continuing injury or collateral consequence that remained after placement in an RRC); *but see Levine v. Apker*, 455 F.3d 71, 77 (2ⁿᵈ Cir. 2006) (holding that § 2241 petition challenging BOP's regulation governing CCC placement was not mooted by petitioner's release from custody during pendency of appeal – "If Levine prevails on this appeal and we remand to the district court for further proceedings, the fact that the district court [which was also the sentencing court] might, because of our ruling, modify the length of Levine's supervised release would constitute "effectual relief.").

There is also a line of district court cases holding that a habeas proceeding is moot under the circumstances presented here. *See, e.g., Swims v. Hickey*, No. 2:08cv112, 2009 WL 2341433 (S.D. Ga. July 29, 2009) (dismissing § 2241 petition as moot where petitioner sought relief in the form of placement into an RRC and a six month reduction to enter the RRC – "Because Swims was released on February 27,

2009, there is no longer a live case or controversy to be litigated in this Court."); *Green v. Grayer,* No. 1:09cv473, 2010 WL 398112 (N.D. Ga. Jan. 25, 2010) (dismissing § 2241 petition as moot, where petitioner sought an order directing the BOP to consider him in good faith for placement in an RRC for six months and home confinement for six months, and during pendency of proceeding petitioner was transferred to an RRC); *Walton v. Smith*, No. 1:09cv1285, 2010 WL 2836320 (C.D. Ill. July 15, 2010) (holding that it appeared § 2241 petition claiming denial of due process and equal protection by the BOP's failure to place prisoner in an RRC for the last twelve months of his sentence was mooted by prisoner's release to an RRC); *Hestand v. Zych*, No. 5:08cv14207, 2010 WL 1948629 (E.D. Mich. May 13, 2010) (dismissing § 2241 petition as moot, where petitioner (who had been sentenced to a term of incarceration followed by supervised release) challenged the BOP's determination regarding the time for which he was eligible for RRC placement; "Because Petitioner has been . . . placed [in an RRC], there is no further relief that the Court may provide him.").

In light of the foregoing, petitioner's habeas claims relating to his RRC placement should be dismissed.

Petitioner's "Retaliation" Claim

The amended petition also raises a claim that "FPC Pensacola retaliated against [petitioner] following his filing of the original Habeas petition contrary to his rights under the Fifth and Eighth Amendments to the U.S. Constitution" when on seven occasions institutional staff awakened petitioner during the night to perform urinalysis testing.  (Doc., 14, p. 5A).  But this claim is not cognizable on federal habeas, because it challenges the conditions of petitioner's confinement and not the execution of his sentence.  The use of habeas corpus "as a vehicle for relief from prison conditions has not been addressed by the Supreme Court."  *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990).  However, in the Eleventh Circuit, "[the appropriate] relief from prison conditions that violate the Eighth Amendment . . . is

to require the discontinuance of any improper practices, or to require correction of any condition causing cruel and unusual punishment." *Id.* "[R]elief of an Eighth Amendment violation does not include release from confinement ." *Id.* Thus, this habeas proceeding is not the proper vehicle for petitioner to pursue his retaliation claim. If it is pursued at all, it should be raised in a *Bivens* suit. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[7]

Even if petitioner's retaliation claim was cognizable in this habeas proceeding, the record establishes that petitioner failed to exhaust his administrative remedies with respect to this claim prior to initiating this lawsuit. (Doc. 19, Attach. A). Indeed the very nature of his allegations – that "in the month following the filing of the original petition" (doc. 14, p. 5A), FPC staff began retaliating against him for filing the petition – demonstrates that petitioner could not have exhausted his administrative remedies before commencing this action. Thus, his retaliation claim is due to be dismissed for failure to exhaust administrative remedies. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (holding that prisoners must exhaust administrative remedies before habeas relief can be granted, including relief pursuant to § 2241); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998) (holding that exhaustion requirement of 42 U.S.C. § 1997e(a) applies to *Bivens* actions brought by federal prisoners); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

---

7 *Bivens* permits "injured plaintiffs [to] bring a cause of action for damages against federal officers based on violations of their constitutional rights," much like a 1983 suit permits claims against state officials. *Behrens v. Regier*, 422 F.3d 1255, 1263 & n. 15 (11th Cir. 2005).

## CONCLUSION

Petitioner's ultimate objective in bringing this habeas action was pre-release release to an RCC. Since petitioner was released to an RRC and has now been released from incarceration, there is no longer a case or controversy to litigate. Success for petitioner could not alter the supervised release portion of his sentence. Therefore his habeas claims are moot.

Petitioner's constitutional claims arising from unnamed individual prison officials' alleged retaliation against him for filing this lawsuit are not cognizable in this habeas proceeding; rather they may be raised in a *Bivens* action. Nonetheless, they are presently due to be dismissed for petitioner's failure to exhaust his administrative remedies.

Accordingly it is respectfully RECOMMENDED:

1.  That respondent's motion to dismiss (doc. 24) be GRANTED.

2.  That the amended petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (doc. 14) be DISMISSED as follows:

    a.  Petitioner's claims challenging the BOP's procedures and decision concerning petitioner's RRC placement be DISMISSED AS MOOT.

    b.  Petitioner's retaliation claim be DISMISSED WITHOUT PREJUDICE as not cognizable in this habeas corpus proceeding and because petitioner failed to exhaust his administrative remedies.

3.  That the Clerk be directed to close the file.

At Pensacola, Florida this 28th day of July, 2010.


/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**